Justice Blackmun,
concurring in the judgment in part and dissenting in part.
I cannot agree that contempt of court is the “same offence” under the Double Jeopardy Clause as either assault with intent to kill or possession of cocaine with intent to distribute it. I write separately to emphasize two interrelated points.
I
I agree with Justice Souter that “the Blockburger test is not the exclusive standard for determining whether the rule against successive prosecutions applies in a given case.” Post, at 756. I also share both his and Justice White’s dismay that the Court so cavalierly has overruled a precedent that is barely three years old and that has proved neither unworkable nor unsound. I continue to believe that Grady v. Corbin, 495 U. S. 508 (1990), was correctly decided, and that the Double Jeopardy Clause prohibits a subsequent criminal prosecution where the proof required to convict on the later offense would require proving conduct that constitutes an offense for which a defendant already has been prosecuted.
If this were a case involving successive prosecutions under the substantive criminal law (as was true in Harris v. Oklahoma, 433 U. S. 682 (1977), Illinois v. Vitale, 447 U. S. 410 (1980), and Grady), I would agree that the Double Jeopardy *744 Clause could bar the subsequent prosecution. But we are concerned here with contempt of court, a special situation. We explained in Young v. United States ex rel. Vuitton et Fils S. A., 481 U. S. 787 (1987):
“The fact that we have come to regard criminal contempt as ‘a crime in the ordinary sense/ [Bloom v. Illinois, 391 U. S. 194, 201 (1968)], does not mean that any prosecution of contempt must now be considered an execution of the criminal law in which only the Executive Branch may engage.... That criminal procedure protections are now required in such prosecutions should not obscure the fact that these proceedings are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court. In punishing contempt, the Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties’ participation in judicial proceedings.” Id., at 799-800.
The purpose of contempt is not to punish an offense against the community at large but rather to punish the specific offense of disobeying a court order. This Court said nearly a century ago: “[A] court, enforcing obedience to its orders by proceedings for contempt, is not executing the criminal laws of the land, but only securing to suitors the rights which it has adjudged them entitled to.” In re Debs, 158 U. S. 564, 596 (1895).
II
Contempt is one of the very few mechanisms available to a trial court to vindicate the authority of its orders. I fear that the Court’s willingness to overlook the unique interests served by contempt proceedings not only will jeopardize the ability of trial courts to control those defendants under their supervision but will undermine their ability to respond effec *745 tively to unmistakable threats to their own authority and to those who have sought the court’s protection.
This fact is poignantly stressed by the amici:
“[Cjontempt litigators and criminal prosecutors seek to further different interests. A battered woman seeks to enforce her private order to end the violence against her. In contrast, the criminal prosecutor is vindicating society’s interest in enforcing its criminal law. The two interests are not the same, and to consider the contempt litigator and the criminal prosecutor as one and the same would be to adopt an absurd fiction.” Brief for Ayuda et al. as Amici Curiae 20 (emphasis in original).
Finally, I cannot so easily distinguish between “summary” and “nonsummary” contempt proceedings, ante, at 696-697, for the interests served in both are fundamentally similar. It is as much a “disruption of judicial process,” ante, at 695, to disobey a judge’s conditional release order as it is to disturb a judge’s courtroom. And the interests served in vindicating the authority of the court are fundamentally different from those served by the prosecution of violations of the substantive criminal law. Because I believe that neither Dixon nor Foster would be “subject for the same offence to be twice put in jeopardy of life or limb,” U. S. Const., Arndt. 5, I would reverse the judgment of the District of Columbia Court of Appeals.